UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN TOPP,

    Petitioner,                                  Case No. 08-cv-11748

v.                                               Honorable Patrick J. Duggan

SHERRY BURT,

    Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) GRANTING CERTIFICATE OF APPEALABILITY

Petitioner John Jerome Topp is in the custody of the Michigan Department of Corrections under authority of an April 29, 2006 Genesee County Circuit Court Judgment of Sentence imposing a sentence of five to fifteen years. Petitioner's sentence was imposed following his plea of no contest to third-degree criminal sexual conduct on March 21, 2006. Petitioner seeks federal habeas relief pursuant to 28 U.S.C. § 2254, claiming that the trial court erroneously denied his motion to withdraw his plea. For the reasons stated below, the Court denies the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged by information with two counts of first degree criminal sexual conduct, two counts of second degree criminal sexual conduct, and one count of criminal sexual conduct second degree assault. The charges arose from an accusation by Petitioner's thirteen-year-old niece that Petitioner had molested her numerous times several years earlier.

A preliminary examination was held on January 27, 2006. At the preliminary examination, Petitioner's niece testified that Petitioner had sexual intercourse with her a number of times in 2002. The victim testified that she did not tell anyone at the time. The victim testified that she and her family moved from Michigan to Indiana in 2003, and returned to Michigan in April 2005. In July 2005, a single incident occurred where Petitioner rolled on top of her and tried to kiss and bite her, but did not have sexual intercourse with her. The victim did not tell anyone about this incident at the time. The victim testified that she told her parents about the sexual assaults in October 2005, after her stepfather asked her and her siblings if anything had happened to her with her uncle.

Following the victim's testimony at the preliminary examination, the state trial judge found probable cause as to two counts of first degree criminal sexual conduct and one count of second degree criminal sexual conduct. The court dismissed the remaining counts on the ground that the victim's testimony was insufficiently specific. The Petitioner pled not guilty to these three counts on February 14, 2006.

Petitioner was scheduled to go to trial on March 21, 2006. Before the jury panel was brought in that morning, the trial court asked the prosecutor to put the plea offer the State had made to Petitioner that morning on the record. The prosecutor provided that the State had agreed to reduce Count I from first degree criminal sexual conduct to third degree criminal sexual conduct and, if Petitioner pleaded no contest to that charge, the State would dismiss the remaining two counts of the information. The prosecutor further described the penalties Petitioner faced with and without the plea agreement.

Petitioner acknowledged that he understood the charges against him and the plea agreement, and that he had discussed the charges and the plea agreement with his attorney. The court asked Petitioner if he had any questions. Petitioner responded that the only question he had was whether he could talk to his mother before making any decision. The prosecutor then indicated that the State's plea offer would be withdrawn once jury selection commenced. The court permitted about a twenty minute recess to permit Petitioner to call his mother.

A brief recess was held. The court then called for the jury to be brought up and asked Petitioner to take his seat for the trial. The following exchange took place:

| | |
|---|---|
| [Petitioner]: | Can I say something? |
| The Court: | It would be up to your attorney. Mr. Grant what's your thought about that? |
| [Defense Counsel]: | I don't know what he wants to say Your Honor. |
| The Court: | Then maybe you need to see what he wants to say first. |
| [Defense Counsel]: | You have him (sic) the opportunity. I don't know what he's going to do. |
| The Court: | Well if we're going to go to trial I would like for you guys to come over here and have a seat. |
| [Defense Counsel]: | I don't know what he's going to do your honor. |
| MR. TOPP: | I just told you. Right there. |
| [Defense Counsel]: | Okay, well you need to sign it. |
| THE COURT: | Thank you. All right we're on the record in the People of the State of Michigan versus John Jerome Topp, Case Number 05-017112-FC. .... |

(3/21/06 Tr. at 8.) The trial judge then had the prosecutor re-state the plea agreement.

3

> [Prosecutor]: Yes Your Honor defense charge CSC first Count one, CSC first Count two, CSC second Count three. The People move to amend Count one to CSC third. CSC third degree is a fifteen-year possible maximum penalty. The People move to dismiss counts two and three pursuant to the written agreement. The Defendant agrees to plead guilty to - -
>
> [Defense Counsel]: No contest.
>
> [Prosecutor]: The Defendant agrees to plead no contest to amended Count one. No objection to that Judge. There is no other special terms of the plea agreement. (inaudible) restitution as the determined by the Court and that's my understanding of the plea agreement.

(*Id*. at 9.) After Petitioner's attorney confirmed that the prosecutor accurately stated the agreement, the trial court engaged in a plea colloquy with Petitioner.

Petitioner indicated that he was forty-seven years old and that he could read, write and understand English. Petitioner confirmed that he understood the plea agreement, that he would be entering a no contest plea to criminal sexual conduct in the third degree, that the offense carries up to fifteen years in prison, and that there was a mandatory prison term. Petitioner further indicated that he understood the rights he was giving up by pleading guilty, although with respect to the presumption of innocence, Petitioner stated:

> [Petitioner]: Can I say something on that?
>
> The Court: Yes sir.
>
> [Petitioner]: Well it seems like since day one I've been here I haven't been given no kind of break, no kind of nothing. I've been pronounced guilty instead of found guilty. Everybody is looking at me out the side of their face like I've done it.

4

(*Id*. at 12.) Petitioner then stated that there was no way that he had sex with the victim because he had venereal warts "that would not allow that." (*Id*.) The Court tried to interject, but Petitioner went on:

> [Petitioner]: Let me just say what I gotta say because it seems like I'm just getting railroaded here.
>
> [Defense Counsel]: Your Honor - -
>
> The Court: No - - I - - sir that's my whole point. I don't want you to feel like [you're] being railroaded. In my opinion - -
>
> [Petitioner]: That's what it is because I haven't been given no kind of nothing.
>
> The Court: Mr. Topp stop talking for a minute okay. All right.
>
> [Petitioner]: Yes sir. I mean you don't see - -
>
> The Court: Sir I've got a jury downstairs. I'm ready to try this case right now okay. Now if you want me to have them come up and we can try this case I'm ready to do that right now. I don't want you pleading guilty or no contest to anything that you're saying you did not do sir.... If you didn't do anything here we've got a jury downstairs and we're ready to have them come up and make a determination after they hear all of the evidence where things are.

(*Id*. at 13.) Petitioner responded that he understood he was getting a jury but that the court would not let him "build my own line of defense or anything," that his sexually transmitted disease "would show up on her" if he "had done something like that to her." (*Id*. at 14.)

Petitioner's trial counsel then stated on the record that he was prepared to go to trial and had conveyed to Petitioner what the consequences were of both to going to trial

5

and taking the plea bargain.  The Court acknowledged counsel's statement and went on to address Petitioner:

> The Court: . . . My point that I'm trying to make to you is that if it's your desire to have a trial we've got a jury here, we're ready to go. The jury has been here since 9:30 a.m.  I'm ready to try this case right now.  I don't have anything else to do but try this case right now.   But so you know you have to make a decision.  It's up to you as to how you want to proceed here. But if you decide - - if your decision is to take the plea then let's get it over with.  If that's not your decision, if your decision is going to trial then let's get this jury up here and get started.  That's all I would say to you okay.

(*Id*. at 15.)  The trial judge then told Petitioner that he would have the opportunity to speak at sentencing but that his choice that day was either to try the case or to take advantage of the prosecutor's offer.  The judge asked Petitioner how he wanted to proceed.  Petitioner responded:

> [Petitioner]: Well see in light of things I would have loved to have thought about some of this and talked it over with my family members but I've been denied that chance and that's one of the things that's making me feel like I'm being railroaded here.
>
> The Court: There is nothing I can do about whatever communications you have because your family certainly has had an opportunity to come see you at the jail.
>
> [Petitioner]: I'm not saying that you have anything to do with that.  I'm just telling you how I feel.
>
> . . .
>
> See this is the only time I'm probably going to get to say anything or get to add anything because (inaudible) talking about during sentencing.  I would like to just say something here, something.
>
> The Court: Well today is not the day for that.

6

. . .

> [Petitioner]: Your Honor I haven't had the chance to say nothing. I've been here five and a couple of weeks or something like that and I haven't had a chance to say nothing to nobody, say anything kind of plea, anything, talk, nothing. I've been jammed up by two lawyers and right now this is about the best one I've had and I'm sticking with him. He's going to be the family lawyer here for whatever comes on. But I would just like to say something here.

(*Id.* at 16-17.) The trial judge again responded that this was not the appropriate time. After several more exchanges with Petitioner, the court reiterated that Petitioner had the choice of either having the jury brought up and trying the case or taking the State's offer. Petitioner responded:

> [Petitioner]: . . . It's just it's a hurtful thing to come in like that and nobody is to consider all - - how would you say all four sides of everything. There (sic) just looking at it as her side. She just said I did that and that's all that it took. I'm not getting a chance to prove anything here.
>
>     . . .
>
> I mean you know some things are self-explanatory -- gosh.
>
> The Court: I think we're just going to have you come over and have a seat and get this jury up here and start this trial okay.
>
> [Petitioner]: No, we can go ahead with the plea, get on out of here. I ain't going to hold nothing up.
>
> The Court: Sir, I'm not interested in holding anything up. I want to give you your chance for a trial if that's what you want okay because I don't take pleas from people who say they haven't, who just tell me they haven't done anything. Let's try it okay that's what the jury is for.
>
> [Petitioner]: But then if I try it and in their minds you know like he said they have children and kids and things I might look like anything to 'em.

7

>  The Court:      Sir, I mean there's twelve people that are going to make a decision and that's what's going to happen you know.
>
>  [Petitioner]:   And what the biggest thing that makes me want to just take the plea is that because I can't bring in evidence proving myself.
>
>  The Court:      In these kind of cases unfortunately a lot of times it comes down to whether the jury is going to believe the victim. I mean that's how it is.
>
>  [Petitioner]:   Your Honor - - I understand that but I have legal documents that says I drive a truck and I stay gone three, four months at a time and stuff like that and - - then when I come home and stuff a lot of times I don't even go to the house I stay right there in the truck.
>
>  The Court:      Yeah, well all I can say to you sir because I don't know anything about the cases today. I'm here to try it or to take you[r] plea if that's what you want to do.
>
>  [Petitioner]:   Well, take the plea.

(*Id.* at 19-20.) The trial court then reiterated Petitioner's rights if he proceeded to trial. Petitioner responded that he understood those rights and that he was giving up those rights by pleading no contest. The court then asked:

>  The Court:      Are you stating that the plea you are making here today is freely, understandingly and voluntarily made and that there's been no undue influence, compulsion or duress used against you to force you to plead guilty is that true?
>
>  [Petitioner]:   Well, what's forcing me to take the plea is I've been told that the only little bit of evidence I have I can't use that would put - - that would prove beyond a shadow of a doubt that I didn't do that.
>
>  The Court:      Well, sir then I'm going to have to have you come over and have a seat and let's get this jury up here if you don't want to take this plea, sir.

8

[Petitioner]: But you asked me. I'm telling you.

The Court: Has there been any - - has there been any undue influence, coercion or duress? Now what your attorney is advising you is not what I'm talking about. Has there been any undue influence, coercion, duress used against you to force you to plead guilty?

[Petitioner]: No.

The Court: Has anyone put a gun to your head and said, "if you don't plead guilty I'm going to shoot you?"

[Petitioner]: No.

The Court: All right, has anyone told you, "I will not try your case if you don't plead guilty."

[Petitioner]: No.

The Court: All right are you stating then that the plea that you are making here today is freely, understandingly and voluntarily being made by yourself?

[Petitioner]: Freely (inaudible) - -

The Court: In other words have you made the decision to enter this plea of no contest sir?

[Petitioner]: Yeah because I feel like I'm being pressured because I can't - -

The Court: You're not being pressured. I'm ready to do this trial. Every time I say step over here and let's get this jury up here you say, "no," you want a plea. So I just want to get through this. Is this what you want sir?

[Petitioner]: But see you have to see what I feel Your honor. I feel like the only - - the only person I have in my favor and corner is the most high God. That's all I have.

The Court: I feel that way every day, but - -

[Petitioner]: I have my mother. She's been sweet.

9

> The Court:   Mr. Topp I don't want to get off track here okay.
>
> [Petitioner]:   We're not getting off track.
>
> [Defense Counsel]:   (inaudible)
>
> The Court:   Yes we are. I want to focus on what I'm doing so I can get it done okay, all right. And what I'm doing is what I do with everybody who comes in front of me okay. I'm not treating you any differently okay. So if you want to go through this process then lets do it or not so you tell me what you want to do because I've got a jury. I'm ready to try it okay, seriously. I've got all day, all week to try this case. I haven't got nothing better to do. So you tell me right now are we going to finish this or do you want to have the jury brought up.
>
> [Petitioner]:   Let's finish this.

(*Id.* at 21-23.) Petitioner went on to acknowledge that he was entering the plea freely, understandingly and voluntarily, that there had been no undue influence or duress used against him, and that no promises had been made to get him to plead other than those stated on the record. Petitioner then pleaded no contest to a single charge of criminal sexual conduct in the third degree. The court found a sufficient factual basis for the plea based on the victim's testimony at the preliminary examination. The court also found that the plea was freely and voluntarily made and accepted the plea.

On April 20, 2006 the trial court sentenced Petitioner to five to fifteen years in jail, with credit for 188 days served.

Petitioner then filed, through newly appointed counsel, a motion to withdraw his plea. In this motion, Petitioner argued that he made statements at the plea indicating he felt coerced and, under Michigan precedent, the court should permit him to withdraw his

10

plea and proceed to trial. The trial court denied the motion following a hearing on November 13, 2006.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals. Petitioner raised one claim in his appeal: that the trial court erred in not permitting him to withdraw his no contest plea. On January 19, 2007, the court denied the delayed application for leave to appeal for lack of merit in the grounds presented. *People v. Topp*, No. 275013 (Mich. App. Jan. 19, 2007). On May 30, 2007, the Michigan Supreme Court denied Petitioner's application for leave to appeal the court of appeals' order on the ground that the Supreme Court was not persuaded that the question presented should be reviewed by the Court. *People v. Topp*, 478 Mich. 873, 731 N.W.2d 731 (2007).

Petitioner filed the present habeas petition pursuant to 28 U.S.C. § 2254 on April 24, 2008. The single claim Petitioner asserts is that the Michigan courts erred in denying his motion to withdraw his plea. Respondent filed a response to the petition on January 9, 2009, arguing that Petitioner's claim lacks merit. Petitioner filed a reply brief on February 2, 2009.

On July 6, 2009, Petitioner filed a motion to stay proceedings and hold the petition in abeyance. In his motion, Petitioner stated that he wanted to return to the state courts "in light of new information that [his] sentence is invalid due to a scoring error" involving offense variables 3, 4 and 11 of the Michigan sentencing guidelines, along with unspecified "ineffective assistance of counsel issues." On March 24, 2010, this Court denied Petitioner's motion to hold the Petition in abeyance.

On April 6, 2010, Petitioner filed a notice of interlocutory appeal from the Court's order denying his motion to hold the petition in abeyance. This Court denied Petitioner a certificate of appealability with respect to his appeal, but granted Petitioner's application to proceed *in forma pauperis* on appeal. As of this date, the Sixth Circuit Court of Appeals has not acted on Petitioner's appeal.

## JURISDICTION

A threshold question is whether this Court has jurisdiction to pass upon the merits of Petitioner's application for a writ of habeas corpus due to the pendency of his interlocutory appeal.

Ordinarily, the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals. *Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981). An exception to this rule exists, however, when a litigant files a notice of appeal from a nonappealable order. *Id*. at 1222. In such a case, the Sixth Circuit has held that the filing of a notice of appeal from a nonappealable order does not divest the district court of jurisdiction to proceed. *Id*.

This Court's earlier order denying Petitioner's motion to stay is an unappealable order. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S. Ct. 1133 (1988) (holding that a district court order denying a motion to stay is not appealable under either 28 U.S.C. § 1291 as an appeal of a final decision or under § 1292(a) as an appeal of an order granting or denying an injunction); *cf. Swanson v. DeSantis*, 606 F.3d 829 (6th Cir. 2010) (dismissing for lack of jurisdiction the state's appeal of a district court order granting in part and denying in part a motion to stay a habeas corpus petition). The

12

filing of the notice of appeal thus does not deprive this Court of jurisdiction to determine the merits of Petitioner's application for habeas relief.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes the following standard of review for Petitioner's application for habeas relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently that the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). An "unreasonable application" occurs "if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. at 1523. A federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

13

## ANALYSIS

Petitioner asserts that he is entitled to habeas relief because the Michigan courts improperly denied his motion to withdraw his plea. Specifically, Petitioner asserts that the transcript of the plea colloquy demonstrated that he asserted his innocence several time, and that he was "railroaded" into pleading no contest. Respondent argues that habeas relief is inappropriate because the Michigan courts adjudicated this claim on the merits and their finding that Petitioner's plea met all federal constitutional standards was reasonable under clearly established federal law.

A guilty plea is valid if it is entered voluntarily, knowingly and intelligently, "'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970)). The same standard applies to a plea of no contest or *nolo contendere*. *See Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008); *cf. North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970) ("An individual accused of crime may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime"). A voluntary plea is entered "'by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel" that is not "induced by threats (or promises to discontinue improper harassment), misrepresentations (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"

*Brady*, 397 U.S. at 755, 90 S. Ct at 1472 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957)). To enter an intelligent plea, the defendant must understand the true nature of the charges against him. *Brady*, 397 U.S. at 756, 90 S. Ct. at 1473. This requirement is satisfied where the record reflects that the charge and the elements of the crime were explained to the defendant either by the court or by competent defense counsel. *Bradshaw,* 545 U.S. at 183, 125 S. Ct. at 2405-06.

The state has the burden of showing that the plea was voluntary and intelligent. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993) (citing *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709 (1969)). When the state provides a transcript of the plea proceedings sufficient to show that the plea was voluntary and intelligent, and the state court finds as a factual matter that the plea was proper, a presumption of correctness arises. *Id.* The voluntariness of a plea is to be determined in light of all the relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749, 90 S. Ct. at 1469.

With respect to Petitioner's plea of no contest, the trial court found as a factual matter that the plea was voluntary and intelligent. A review of the plea hearing transcript demonstrates that Petitioner's plea was voluntary and intelligent as set forth by the relevant United States Supreme Court precedent. The holding of the Michigan courts thus was a reasonable application of clearly established Supreme Court precedent.

Petitioner argues that his plea was not voluntary because he maintained his innocence at the plea hearing and afterwards. The Supreme Court has held, however, that a plea voluntarily and intelligently entered is not invalid merely because the defendant continues to maintain his innocence, so long as a factual basis for the plea is demonstrated

15

by the state. *Alford*, 400 U.S. at 38, 91 S. Ct. at 167-68. The transcripts of the plea hearing and preliminary examination hearing reflect that a factual basis for Petitioner's plea to third-degree criminal sexual conduct was established. The Michigan courts' rejection of Petitioner's argument, therefore, was not unreasonable under clearly established United States Supreme Court precedent.

Petitioner also argues that his plea was not voluntary because he felt "railroaded" into pleading no contest. The record does not support Petitioner's claim. The plea hearing transcript suggests that Petitioner wished that he had more time to consider the plea and felt that the legal rules governing admissible evidence in his case were unfair. Such factors, however, do not render a plea legally involuntary. With respect to the amount of time a defendant has to decide whether to accept or reject a plea, several courts have held that time constraints do not render involuntary a plea that the record otherwise demonstrates was entered into knowingly and voluntarily. *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (providing that the amount of time the defendant had to consider the plea is only relevant if it somehow rendered his plea coerced, and therefore involuntary); *United States v. Mescual-Cruz*, 387 F.3d 1, 10 (1st Cir. 2004) (citing *United States v. Marrero-Rivera*, 124 F.3d 342, 350 (1st Cir. 1997) ("the strategic decision to plead guilty [is] not [necessarily] rendered involuntary by the anxieties and time pressures confronting [the defendant]")); *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that petitioner's plea was involuntary.") While Petitioner may have felt pressure

16

because evidence he wished to present at trial was precluded by the applicable rules of evidence, this is a position regularly faced by criminal defendants and hardly sufficient to evince an overbearing of his will or to have prevented him from rationally assessing the available options.

The transcripts in the present case reveal no actual or threatened physical harm or mental coercion overbearing Petitioner's will. They reveal no evidence that the Petitioner was so overborne that he could not, with the help of counsel, rationally weigh the advantages of pleading no contest against the advantages of going to trial. There is no suggestion of ineffective assistance of counsel at the plea. The "railroading" claimed by Petitioner is simply the consequences of being a defendant charged with a serious felony. The United States Supreme Court has held that acting under such pressure does not make a plea constitutionally involuntary. *See Brady*, 397 U.S. at 75-51, 90 S. Ct. at 1470. The Michigan courts' rejection of Petitioner's claim that his plea was involuntary was thus consistent with clearly established Supreme Court precedent.

## CONCLUSION

For the reasons stated above, the Court holds that Petitioner is not entitled to habeas relief based on his claim that the Michigan courts should have granted his request to withdraw his no contest plea. The Court concludes, however, that Petitioner is entitled to a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(3). While the Court continues to believe that Petitioner is not entitled to a writ of habeas corpus for the reasons set forth herein, the Court believes that the issue raised in Petitioner's application may be "debatable among jurists of reason." *See Barefoot v. Estelle*, 463 U.S. 880, 893

17

n.4, 103 S. Ct. 3383, 3394 n.4 (1983); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003).

Accordingly,

**IT IS ORDERED**, that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that the Court **GRANTS** a certificate of appealability with respect to Petitioner's claim that the Michigan courts should have granted his motion to withdraw his plea of no contest;

**IT IS FURTHER ORDERED**, that Petitioner may appeal this decision *in forma pauperis* because he was granted leave to proceed *in forma pauperis* in this Court. Fed. R. App. P. 24(a)(3).

Date: March 28, 2011

<pre>                              s/PATRICK J. DUGGAN
                              United States District Judge</pre>

Copies to:
John Topp
#600348
Ionia Maximum Correctional Facility
1576 W. Bluewater Highway
Ionia, MI 48846

John Topp
#600348
Charles Egeler Reception and Guidance Center
3855 Cooper St.
Jackson, MI 49201

AAG John S. Pallas